SAMUEL BALCH, Respondent, v. CHARLES MYERS, Appellant.

*Kansas City Court of Appeals, February 28, 1896.*

1. **Forcible Entry and Detainer**: RIGHTFUL OWNER: POSSESSION: OFFSETTING TRESPASS. In an action of forcible entry and detainer the question of rightful owner is immaterial and one trespass can not be offset with another.

2. ———: EVIDENCE: OTHER LANDS OF PLAINTIFF. In an action of forcible entry and detainer evidence as to how other parties held other lands of the plaintiff is properly excluded.

3. ———: EXCESSIVE DAMAGES: MOTION IN ARREST: REMITTITUR. Where the finding of the jury as to damages and monthly rents exceeds the amount stated in a complaint for forcible entry and detainer and the judgment is entered in accordance with the verdict, there is error on the face of the record and the judgment will be arrested unless the excess is remitted.

*Appeal from the Carroll Circuit Court.*—HON. T. SHACKLEFORD, Special Judge.

AFFIRMED.

*C. Hammond & Son* and *F. C. Sasse* for appellant.

(1) The extreme latitude given in the tenth instruction for plaintiff may account in some measure for the extraordinary verdict of the jury. In respect to the amount of damages and monthly rents and profits, they are neither restricted by the amount claimed, nor by the evidence. The record shows this glaring error. *Moore v. Dixon*, 50 Mo. 79. (2) The verdict of the jury being so largely in excess of every demand shows it to have been the result of passion and prejudice. "This objection goes to the integrity of the entire verdict, and a *remittitur* will not cure the error, but a new trial should be awarded." *Ellis v. Construction Co.,* 60 Mo. App. 67.

*Tyson S. Dines, Perry S. Rader,* and *James W. Davis* for respondent.

(1) A review of the evidence resolves this cause into two questions, and the answer to them will decide the matter. These questions are: *First.* Was Samuel Balch, plaintiff, in possession by his servant, John Tollie, of the southeast quarter of section 15, township 53, range 20, the land in controversy, on the eighteenth day of March, 1889, and prior thereto? *Second.* Did the mob of midnight whitecappers, under the authority

or with the consent of Charles Myers, defendant, forcibly dispossess John Tollie, servant of plaintiff, therefrom? (2) Appellant did not at any time offer to show that plaintiff did not have exclusive possession of the entire bar from 1881 to 1889. What he did offer to show was that there were other farms and other settlers within the large inclosure at the time of the trial. (3) The objection that the damage recovered under instruction 10 given for plaintiff, is excessive, comes too late. No objection was made to that instruction in the motion for a new trial. It can not, therefore, be raised here. *Ridenhour v. Railroad*, 102 Mo. 291; *Weese v. Brown*, 102 Mo. 304; *Schmitz v. Railroad*, 119 Mo. 279; *Orr v. Rode*, 101 Mo. 399. In civil causes, no exceptions can be taken in this court except such as have been expressly decided by the trial court. R. S. 1889, sec. 2302. The evidence shows that plaintiff was entitled to more damages than he recovered. (4) Taking all the instructions given for both plaintiff and defendant they correctly and unmistakably declared the law of the case.

GILL, J.—This is an action of forcible entry and detainer, wherein defendant was charged with having unlawfully ousted plaintiff from the possession of a quarter section of land, located in the river bottom, near Brunswick. Both parties have furnished voluminous abstracts of the evidence, concerning which it is only necessary to say, that it tends to prove and disprove all that is claimed by either party. The land lies in between the Missouri and the mouth of the Grand river, and up to a few years ago was only a sand bar; but by accretion and filling from overflows, became suitable for pasturing and tilling purposes. For several years subsequent to 1881, the evidence unquestionably shows that plaintiff constructed a fence

across this neck of land, running from river to river, and thereby inclosed this and other lands owned by him, so as to use it all—some for grazing and some for tilling purposes. In the winter of 1888–1889 and the spring of 1889, the evidence is conflicting whether plaintiff or defendant had the actual possession of this quarter section. The jury, however, found that plaintiff had possession. At all events, about March 10, 1889, the plaintiff employed one Tollie to go onto the land, clear it up and prepare it for cultivation; and to carry out this design plaintiff moved Tollie, with his wife and children, into a small, unoccupied house then on the land. Defendant then set up claim thereto and at once ordered Tollie to move out; which he (Tollie) declined to do, advising defendant that he was there under the employment and by the direction of plaintiff. Defendant then went before a justice of the peace and brought suit for forcible entry and detainer and made plaintiff and Tollie codefendants. (This action was subsequently abandoned). Tollie set about the work of putting some of the land into a state of cultivation; but on the night of March 18 (more than a week after he had entered on the land), about a dozen masked men, armed with shotguns and revolvers, appeared at Tollie's house and forced him to load up wife, children, and household goods and leave the premises. Defendant denied that he took any part in this forcible dispossession. The jury evidently found to the contrary and there was abundant evidence to sustain that finding. The next morning after this forcible expulsion of Tollie, defendant took possession of the house and lands and has retained the same ever since.

This disseizen furnishes the basis of the present action, which resulted below in a verdict and judgment for plaintiff, and defendant appealed.

I.   A careful examination of this record discloses no prejudicial error against defendant Myers, *unless* it be that the verdict and judgment relating to damages is in excess of the amount prayed for in the complaint.   We will refer to this later on.

To sustain plaintiff's action, he was obliged to prove, *first*, that he was, on March 18, 1889, in the actual peaceable possession of the premises; and, *second*, that on that day defendant, in person, or through others acting for him and by his knowledge and consent, forcibly dispossessed the plaintiff.   As already stated, there was evidence tending to prove both of these propositions.   These, too, were the main material issues involved in the controversy.   As to who was the rightful owner of the property in dispute— whether or not plaintiff wrongfully put his hired man, Tollie, on the premises and thereby committed a trespass on defendant's rightful possession—all this was outside the issues of this case.   If plaintiff, through his employee, had committed a forcible entry on defendant's actual possession, his proper recourse was to the courts and not to take the law into his own hands and attempt to set off one trespass with another. *Sitton v. Sapp*, 62 Mo. App. 197.   The trial court submitted these proper issues by instructions entirely fair to both sides, and hence the jury's finding thereon must be held conclusive.

The exclusion of certain evidence as to how third parties held and occupied other lands claimed by the plaintiff in the same neighborhood, was entirely proper.   Their cases were not on trial; and to admit such testimony would only tend to confuse the trial of issues directly involved.

II.   However, a further and more difficult question arises in this case.   The complaint on which the cause was tried placed the plaintiff's damages at $250

and monthly rents and profits at $20. The verdict of the jury fixed plaintiff's damages at $510 and monthly rents and profits at $37.50, and the judgment was rendered in accordance therewith, doubling the same.

It has been well settled in this state, that where, in an action of forcible entry and detainer, the plaintiff in his complaint claims a specific sum, as embracing his damages, and therein alleges the monthly rents and profits to be a sum certain, then a judgment awarding a greater amount than that claimed in the complaint is erroneous. *Moore v. Dixon*, 50 Mo. 424; *Feedler v. Schroeder*, 59 Mo. 364; *Armstrong v. City of St. Louis*, 3 Mo. App. 100. In answer to this, plaintiff's counsel have insisted, and urged, too, with much force and ability, that since the defendant failed by motion in arrest (or even for new trial) to call the attention of the trial court to this error, he is now, in this appellate court, precluded from so doing. In reply, this is claimed to be *such an error on the face of the record proper* as calls for relief, regardless of the absence of a motion in arrest in the lower court.

After a laborious consideration of the decided cases in this state (many of which have been cited by plaintiff's learned counsel), I find it quite difficult to evolve therefrom any settled rule as to what errors in the record proper may be taken advantage of in the absence of a motion in arrest filed in the trial court. Some of the best considered cases seem to base the distinction on the question whether or not the error is *fatal*, or, as some express it, *material*. *Sweet v. Maupin*, 65 Mo. 65; *McIntire v. McIntire*, 80 Mo. 470. But when the various rulings are examined, it will be found, I think, impossible to harmonize them on any such grounds.

In my opinion, however, we shall be more in accord with the prevailing decisions of the supreme

court, if we determine the error in this case as *material,* and of such a character as to warrant our attention and judgment, notwithstanding the failure of the defendant to file the appropriate motion in the circuit court. The error unquestionably appears on the face of the record proper. The complaint, verdict and judgment in this case constitute the record proper. The verdict and judgment were not responsive to the complaint, in that the latter alleged and asked general damages of $250, and $20 as monthly rents and profits, while the verdict and judgment ignored this and gave more than double such amounts.

Under the complaint, the plaintiff might have recovered a verdict of $250 damages, and $20 monthly rents and profits. The statute then would double this and authorize judgment for $500 and $40 monthly rents. But, instead of this, the verdict was for $510 damages, and $37.50 monthly rents; and this the judgment doubled and gave plaintiff $1,020 damages, and $75 monthly rents. The evidence fully justified the latter amounts; but for reasons before stated, the face of the complaint did not warrant it.

If, now, the plaintiff, within fifteen days, will remit the excess, the judgment will be affirmed and allowed to stand, for recovery of the property, $500 damages, and $40 a month rents, subsequent to the rendition of the judgment in the circuit court. The costs of the appeal will be taxed against the plaintiff. All concur.