## GARY-REALTY COMPANY v. E. P. KELLY et al., Appellants.

### Division Two, June 3, 1919.

1. **WAIVER: Trial By Jury: Amendment of Complaint: Unlawful Possession.** Material changes in the pleadings by amendment, after a stipulation waiving trial by jury has been filed, ordinarily nullifies such waiver. But an amendment of a complaint charging holding over of the possession of the premises wilfully and without force after the expiration of the lease term, by inserting an allegation of the value of the monthly rents and profits, does not nullify the waiver, for such allegations does not constitute a material change in the complaint.

2. **UNLAWFUL POSSESSION: Complaint: Material Allegations: Monthly Rents.** Neither the forms in common use, nor the statutes, nor the adjudicated cases, require a specific allegation as to the value of the monthly rents and profits, or any prayer for a finding of the same, in a complaint charging unlawful possession and detainer; and no amendment adding an allegation of the value of the monthly rents and profits is a material change in the complaint.

3. **PRE-JUDGING CASE: Unlawful Detainer: Termination of Lease: Waiver.** In the trial of a case of unlawful detainer by the judge sitting as a jury, a ruling by him in the midst of the trial that the appointment of a receiver constituted, by its terms, a termination of the lease, absent waiver, was not a pre-judging of the case, but a construction of the lease by him as a judge, and not as a jury, and left the question of a waiver of the breach, pleaded by defendant, thereafter to be resolved upon the facts adduced by the testimony, as the judge at the time announced would be done, and was done.

4. **UNLAWFUL DETAINER: Termination of Lease: Waiver: Substantial Evidence.** Whether the facts in evidence established a waiver of the condition upon which the lease by its terms was to

Realty Co. v. Kelly.

terminate was a question to be resolved by the trial judge sitting as a jury, and if his finding was supported by substantial evidence it will not be disturbed on appeal.

5. **LEASE:** Forfeiture: Waiver: Receivership. A five-year lease contained a clause that "in case the lessee goes into receiver's hands, this lease shall become void and the remaining portion of the term shall revert to the lessor." After the lease had run nine months a receiver of the lessee was appointed by the circuit court, who took into his possession all the property of the lessee. Eight days later the lessor gave written notice both to the lessee and the receiver that the lease had been terminated by the appointment of the receiver, but in the notice expressed a willingness to permit the receiver to remain in possession for the time being as a month-to-month tenant. Thereafter the receiver called on the lessor's agent and agreed to become a tenant by the month, and paid the rent for a month in advance, but before the end of the month the lessor gave notice to the receiver to vacate on or before the last day of the next month, but the receiver refused to vacate and tendered checks for the rent for the next two months, which were refused. *Held*, notwithstanding no valid agreement could be made with the receiver for a month-to-month tenancy, since the court appointing him could alone make a valid contract affecting the property in his hands, there was no waiver by the lessor of the condition broken, and no intention to waive, nor was there any acquiescence in the receiver's possession under the lease.

6. **WAIVER:** Constant Denial. No one can be deemed to have waived a right when every act he does and every word he utters constitute a denial of a waiver thereof, and a denial of any intention to waive; especially when this attitude is fully disclosed to and known at all times by the party claiming waiver.

7. **APPEAL:** Rules Applicable to Assignments. Rules governing an appeal are that error will not be presumed; that a mere assignment of error is not sufficient to convict the trial court of error; that to the acts of the trial court, naught else appearing, the presumption of correctness attaches, and upon him who alleges error the burden of establishing it rests.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

AFFIRMED.

*Frank M. Lowe* for appellants.

(1) It was error, under all the circumstances in this case as disclosed by the record, to deny appellants a jury trial. McGeagh v. Nordberg, 53 Minn. 235; Burnham v. Ry. Co., 88 Fed. 627; Chicago Ry. Co., v. McGrew, 113 Mo. 393. (2) The finding and judgment of the court are against the law and the evidence, and the court erred in holding that the appointment of a receiver *ipso facto* made void the lease. (a) The law does not support the rule of court below in holding that the appointment of a chancery receiver *ipso facto* determined the lease. Pa. Steele Co. v. New York Ry. Co., 198 Fed. 728; Taylor on Landlord and Tenant (9 Ed.), sec. 136a, p. 167; Durand & Co. v. Howard & Co., 216 Fed. 585; State v. Reynolds, 209 Mo. 161; Smith v. Miller, 49 N. J. L. 524. (b) The receiver could not enter into a new contract from month to month and bind the court without the sanction and order of the court. St. Joseph Gas Co. v. Barker, 243 Fed. 206. (c) If the appointment of a receiver did make void the lease then and in that case respondent waived the breach by accepting rent from the receiver. Garnhart v. Finney, 40 Mo. 449; William v. Vanderbilt, 145 Ill., 238; Kenny v. Seu Si Lun, 101 Minn. 253; Guptill v. Macon Stone Supply Co., 140 Ga. 696. (d) If we are wrong in the above provisions then we are entitled to have our contention sustained for the reason that respondent has failed to prove that there was a month to month lease entered into. (3) The verdict is excessive and no evidence was introduced of any damage having been sustained by respondent. It is hardly necessary to emphasize this proposition in the face of the fact that the word "damage" was never mentioned to any witness and no testimony was offered that in the remotest fashion warranted the

court in giving a judgment for $2000 against appellants. (4) The finding and judgment of the court was clearly the result of bias and prejudice of the court against these appellants. (5) The court erred in permitting respondent to file the stipulation waiving a jury that had been entered into at the November term of court and which had since been withdrawn by motion of appellants.

*Cooper, Neel & Wright* for respondent.

(1) The jury waiver was binding. Sec. 1970, R. S. 1909; Thompson v. King, 173 Mass. 442; Alcorn v. Dennis, 105 Pac. 1012. (a) Exactly the same causes of action embraced in the two counts of the amended complaint were merged in the original. Shantz & Kroff v. Reynolds, 70 Mo. App. 668; Bradford v. Tilley, 65 Mo. App. 181. (b) In the first complaint we charged that the complainant had possession on the date the unlawful detainer began, because, although the appellants were in actual possession, holding over under claim of assignment by the lessee, the tenant's possession is that of his landlord, and when the tenant, at the expiration of his term, relets and leaves the premises or surrenders his lease, the landlord is considered as resuming possession immediately though not actually present on the land. Kaulleen v. Tillman, 69 Mo. 510; May v. Luckett, 48 Mo. 472; Prendergast v. Graverman, 166 Mo. App. 39. (c) The next amendment was increasing the amount of damages asked for in the *ad dammum* clause to the extent of $3000. Such an amendment was clearly permissible, but to avoid any room for argument we withdrew it at the trial. Such re-amendment as to the amount of damages asked cured the change in that respect, if such change was material. (d) And it is wholly immaterial that the amended complaint stated the monthly value of the

rents and profits and in its prayer specifically prayed recovery thereof, while the original complaint did not, for Sec. 7674, R. S. 1909, was mandatory upon the court to allow and render judgment for such damages in the absence of any prayer therefor in the complaint. Moore v. Dixon, 50 Mo. 425; Nelson v. Alporte, 161 Mo. App. 608; Hixon v. Selders, 46 Mo. App. 277; Bierkenkamp v. Bierkenkamp, 88 Mo. App. 449; Coles v. Foley, 13 Mo. App. 253; Balch v. Myers, 65 Mo. App. 428. (2) If the lease was terminated *ipso facto*, as we think it clearly was, by the appointment of a receiver, all doors to argument are closed to appellants. For it becomes immaterial whether there was a month-to-month tenancy or not, and whether respondent accepted rent. No waiver by acceptance of rent could reinstate the void lease, but a wholly new agreement, express and in writing, which is absent in this case, would be necessary for that purpose under Sec. 7883, R. S. 1909. All arrangements between the respondent and the receiver being verbal, would at the most create a tenancy, which respondent could and did terminate by the statutory month's notice. (a) Termination clause is applicable to a chancery receiver. 5 Cyc. 246-12; In re Fixen, 96 Fed. 748; Cox v. Wall, 99 Fed. 546; Galbraith v. Wood, 124 Minn. 210; Louis K. Liggett v. Wilson, 224 Mass. 456. (b) Appointment of receiver *ipso facto* terminated lease. 1 Bouvier's Dictionary p. 585; 2 Tiffany, Landlord & Tenant, par. 194c, p. 1368; 24 Cyc. 1360; Marmet Co. v. Archibald, 37 W. Va. 778; Munigle v. City of Boston, 85 Mass. (3 Allen) 230; Estelle v. Dinsbeer, 30 N. Y. Supp. 243. (c) But even if the lease was voidable, respondent did not waive its termination. (3) Even in the absence of an express agreement, a month-to-month tenancy would be conclusively implied from the conduct of the receiver in holding over after respondents' notice that he might

remain only as a month-to-month tenant. Continued occupancy under such conditions is always held to be an acceptance of the terms imposed, the tenant's assent being inferred. Hunt v. Bailey, 39 Mo. 257; Ins. & Law Bldg. Co. v. National Bank of Mo., 71 Mo. 58; 1 Taylor on Landlord & Tenant, par. 22; 16 R. C. L. par. 683; 2 Tiffany, p. 1486; Gardner v. Dak. Comrs., 31 Minn. 33; Shipman v. National, 64 Tex. 174.

FARIS, J.—This is an action under our forcible-entry and unlawful-detainer statutes for the possession of certain premises situate in Kansas City. Plaintiff had judgment for possession; for damages, assessed at two thousand dollars, which sum was doubled by the court; for future rents and profits, assessed at $650 per month, pending appeal and till possession be delivered to plaintiff, which sum was likewise doubled. Whereupon, defendants Kelly, LeMarquand and LeDoux appealed in the conventional way.

The action orginated before a justice of the peace and was begun by filing a complaint which, formal parts and signature of counsel omitted, reads thus:

"Gary Realty Company, a corporation, duly organized and existing according to law, plaintiff, complains of E. P. Kelly, Paul LeMarquand, A. LeMarquand, O. LeDoux, F. G. Bonfils, Harry H. Tammen and Empress Theatre Company, a corporation, defendants, and says that on the 29th day of October, A. D. 1915, and long before that time he was in the lawful and peaceable possession of the certain premises situated in Kansas City, Jackson County, Missouri, described as the certain (formerly store) room at the northwest corner of Twelfth and McGee Streets in said city, having a frontage of twenty feet and ten inches on said Twelfth Street and extending back northward the full depth of Lot 134, Swope's Addition in said city, and still further north beyond the north line of said lot, ap-

proximately 16 feet, said room having been used as a part of the lobby of the Empress Theatre in the City of Kansas City, Kaw Township, of the County of Jackson, State of Missouri, and has ever since been and still is entitled to the possession thereof; that on the said 29th day of October, 1915, the defendants wilfully and unlawfully hold over and detain possession of said premises or wrongfully and without force, by disseizin, obtained possession of said premises, and have ever since held and still hold possession thereof wrongfully and unlawfully; and although the plaintiff did, on the 30th day of October, 1915, demand in writing the possession of said premises of the defendants, they, the said defendants refused and neglected to quit the possession thereof, to the plaintiff's damage in the sum of two thousand dollars, Wherefore plaintiff demands judgment for the possession of said premises and for said damages."

Thereafter, by *certiorari* under the statute defendants caused the proceedings to be removed to the Circuit Court of Jackson County. In the latter court, and at the December Term, 1915, *semble,* a stipulation waiving trial by jury was duly filed in the case. This stipulation, omitting formal parts and signatures of counsel, reads thus:

"Come now the parties hereto and by their attorneys hereby stipulate and agree that the trial of this cause by jury is hereby waived and that said cause may be set for trial on any day during the first week of January, 1916, term of court, or thereafter, according to the convenience of the court."

On the same day on which the above stipulation was filed, defendants Kelly, LeMarquand and LeDoux filed formal answers, which consisted, in all pertinent parts, of (a) general denials, except of the fact of possession, which defendants Kelly, LeMarquand and LeDoux admitted; (b) a plea of ownership and possession under a purchase by said defendants of the lease at

a sale by the receiver of the Empress Theatre Company, pursuant to an order of the circuit court; (c) a tender, as such tenants so in possession of all rent due according to the tenor of the instrument of lease evidencing the term so purchased, and (d) a waiver of forfeiture by plaintiff of conditions broken, arising, it is averred, from the acceptance of the rent and the recognition of the receiver as plaintiff's tenant. Defendants Bonfils and Tammen filed general denials, which included, of course, negation of the fact of possession.

Thereafter, defendants Kelly, LeMarquand and LeDoux (who, since they alone have appealed, we shall hereinafter call 'defendants) filed a motion to require plaintiff to elect, for that the allegation in plaintiff's complaint that "the defendants wilfully and unlawfully held over and detained possession of said premises, or wrongfully and without force by disseizin obtained possession of said premises, and have ever since held and still hold possession thereof wrongfully and unlawfully" was "an attempt to charge the defendants with both unlawful detainer and forcible entry and detainer" and that "said causes of action being entirely separate and distinct can not under the law be charged in the same cause of action." This motion to elect was overruled. Thereafter, on January 29, 1918, defendants filed *a demurrer to the complaint,* which demurrer, in addition to the customary allegation that the facts set forth in the complaint are not sufficient to constitute a cause of action, further averred "that several causes of action have been improperly united." While this demurrer was overruled, plaintiff on the same day asked and was given leave to file an amended complaint within four days thereafter. Whether the demurrer, as the practice is, was overruled upon and because of the request of plaintiff for leave to file an amended complaint does not affirmatively appear, since no reason is given in the record for the trial court's action in this

behalf. Afterwards, and within the four days allowed by the court, plaintiff filed an amended complaint in two counts. The first count charges the holding over of the possession of the premises wilfully and without force after the expiration of the term; while the second count charges the obtention of possession and the withholding thereof wrongfully and without force by disseizin after demand therefor made in writing. Since the court found in favor of plaintiff upon the first count only, no necessity is seen for burdening this necessarily lengthy statement with a recital of the second count. But the first count is pertinent, since about it, as a storm center, rage well-nigh the whole of the contentions made. It reads thus:

"Comes now the complainant, Gary Realty Company, and for its first cause of action against defendants, states that complainant is and was at all times hereinafter mentioned a corporation, organized and existing under the laws of Missouri, and complains to the above entitled court that on or about the 30th day of October, 1915, and at the time of the institution of this action, complainant had the legal right to the possession of the certain premises (together with the improvements thereon) situated in Kansas City, Jackson County, Missouri, and in Kaw Township, in said city, described as the certain room at the northwest corner of Twelfth and McGee Streets in said city, having a frontage of twenty feet and ten inches on said Twelfth Street and extending back northward therefrom, the full depth of Lot 134, Swope's Addition in said city, and still further north, beyond the north line of said lot, approximately sixteen feet, said room having formerly been used as a store room, but more recently and at the present time being used as a part of the lobby of the Empress Theatre conducted by defendants in said city; that complainant has been ever since the date aforesaid and still is entitled to the possession of said premises

Realty Co. v. Kelly.

and improvements; and that defendants wilfully and without force hold over the possession of said premises after the expiration of the time for which they were let to one H. C. Robertson and his assignee, Empress Theatre Company, (another and different corporation than the defendant of the same name) and also to one Cyrus Jacobs, Receiver, as a month-to-month tenant, and after demand, made in writing for the delivery of the possession thereof; and complainant says that it is ignorant whether or not defendants claim right to possession of said premises under and through said Robertson, Empress Theatre Company and Cyrus Jacobs, Receiver, but complainant believes and therefore alleges the fact to be that defendants hold possession claiming either under said Robertson, Empress Theatre Company and Cyrus Jacobs, Receiver, or some other person or corporation unknown to complainant, and in either event defendants hold over possession of said premises after the expiration of the time for which same were let to anyone whomsoever.

"Complainant further states that it has sustained damages by reason of the unlawful detainer aforesaid in the sum of five thousand dollars, and that the value of the monthly rents and profits of said tenements is eight hundred dollars.

"Wherefore, the complainant prays judgment of restitution and for his damages and the value of the monthly rents and profits of the premises aforesaid."

To the above complaint defendants filed an amended answer—in fact two amended answers—in which, in addition to the pleas heretofore set forth, they raised the issue of estoppel, bottomed on the allegation that plaintiff had filed, in the proceeding for a receiver brought by defendants Bonfils and Tammen against the Empress Theatre Company, an intervening petition for damages accruing on account of past due rent.

The facts of the case, apart from the very complicated nature of the pleadings, are, briefly: That plaintiff leased the premises in dispute to one Robertson, who sub-let them to the Empress Theatre Company for a term of five years (with an option of five years more upon certain conditions) from the first day of October, 1914, at a rental of $500 per month for two years, $550 per month for three years, and at such rent as might be afterwards agreed upon by a re-valuation, for the subsequent five-year option term. The instrument of lease contained but one clause which is necessary to an understanding of the facts and the law in issue. This was Clause 13, and it reads thus: "In case lessee becomes insólvent or goes into bankruptcy, voluntarily or involuntarily, or into receiver's hands, then this lease shall become void and the remaining portion of the term shall revert to lessor."

After this lease had run for some nine months, and while the premises in dispute were in the possession of the Empress Theatre Company as sub-lessee, a proceeding was brought in the circuit court of Jackson County by defendants Bonfils and Tammen as plaintiffs therein, against the Empress Theatre Company, whereby pursuant to the object and prayer of the latter proceeding one Cyrus Jacobs, theretofore the manager of the Empress Theatre Company, was on the second day of July, 1915, appointed receiver of the lessee and as such took into his possession all of the property of the lessee, including the premises in dispute. Eight days after Jacobs was appointed receiver and four days after he qualified as such, and on July 10, 1915, plaintiff gave notice to the Empress Theatre Company and to Cyrus Jacobs as received thereof, of its election to declare a forfeiture of the lease for conditions broken. This notice, omitting address and signatures, reads thus:

"We are writing to call your attention to the fact that the certain lease held by you Empress Theatre

Company as Lessee upon the premises at the northeast corner of the building situated at the northwest corner of Twelfth and McGee Streets, in Kansas City, Missouri, being a room on the corner with about twenty feet and ten inches of frontage on Twelfth Street, and extending back the full depth of Lot 134, Swope's Addetion; thence extending approximately 16 feet north of the north line of said Lot 134, said premises now being used by you as a theatre lobby, and said lease having been made by us as Lessor, dated December 17, 1909, and being for a term beginning October 1, 1914, has been terminated by the appointment of Cyrus Jacobs as Receiver of Empress Theater Company by the Honorable Clarence A. Burney, a Judge of the Circuit Court of Jackson County, Missouri, at Kansas City, on Wednesday, July 7, 1915, and the taking charge and possession of said Theater by said Receiver, and also by the insolvency of said Empress Theater Company.

"The provision of the lease which is applicable is the thirteenth, reading as follows:

" 'In case Lessee becomes insolvent or goes into bankruptcy, voluntarily or involuntarily, or into receiver's hands, then this lease shall become void and the remaining portion of the term shall revert to Lessor.'

"In view of the termination of said lease, as aforesaid, we are willing that Cyrus Jacobs, as Receiver, continue for the time being in possession of the premises above described as a month-to-month tenant for the rental of $550 per month, payable in advance on the first day of each month.

"We shall give due notice to the said Receiver when we desire possession of the property."

Two days after this notice was served on the receiver, the latter called on John S. Wright, of counsel herein for plaintiff, who had in charge for plaintiff all of the legal matters involved, and offered him a check for $500 in payment of the rent on the disputed premises for the month of July, 1915. Thereupon Mr. Wright and Receiver Jacobs discusses the matter of

the alleged forfeiture and Jacobs agreed to retain possession of the premises thereafter as a tenant by the month.    Touching this conversation Wright's testimony runs thus:

"On July the 12th, 1915, Mr. Jacobs came to our office and offered to pay me, as representing the Gary Realty Estate, $500 rent for the premises in controversy here.  The payment was offered in the form of a check for $500 signed by Cyrus Jacobs, Receiver.   I told Mr. Jacobs that we had been instructed, as attorneys for the Gary Realty Company, either to require immediate surrender and possession of these premises, or to require that Mr. Jacobs rent them as receiver on a month-to-month basis; as a month-to-month tenant; that they would be permitted to stay there as a month-to-month tenant.  Mr. Jacobs replied that it was necessary for them to stay there, that they wanted to stay there on any basis, and he agreed to that arrangement, a month-to-month tenancy.  . . . I then took his check, the check I have mentioned, and gave him this receipt, Exhibit 12, explaining to him that we were separating the rent included in the check into two items, for the purpose of making the distinction clear between the tenancy of the Empress Theater Company, which we considered had been terminated by the appointment of him as receiver, and the month-to-month tenancy which was then beginning on his part as receiver.

"Q.  You say that was explained to Mr. Jacobs at that time?  A.  Yes, sir.

"Q.  And is that the reason here you made two receipts on the same sheet of paper?  A.  Yes, sir, and I made mathematical division in his presence.

"Q.  Now, Mr. Wright, there was something said here about the changing of some figures in a notice from $550 to $500.  I call your attention to Exhibit 4, the second line from the bottom, the figures $500, indicating upon its face that it was changed from $550 to $500.  Did you have any conversation with Mr. Jacobs about that?  A.  I did.  When Mr. Jacobs came in that

day, he remarked, I think it was the first remark that he made when we began our conversation, that the notice which had been served on him, and on the theatre stated that we were willing to permit them to remain as a month-to-month tenant on a rental of $500 a month. He said that he had talked with Mr. Schoenberg, and that Mr. Schoenberg had said to him that the Gary Realty Company was willing that they should occupy the premises as a month-to-month tenant at the same rental, of $550 a month, which the theatre had been paying, and I told him that I had since been informed by Mr. Schoenberg that that was a fact; that it had been my impression that the premises had been renting for $550 a month, and I explained to him that I had gotten that impression by hastily looking at the lease, and not making a careful examination of it, and at his request I made the correction.

"Q. Then and there? A. I changed that myself to $500 a month.

"Q. And did he ask you to make the change? A. I don't recall whether he asked me, he called my attention to it, as I have stated, and I then made the change.

"Q. There is a period in the lease where the rental is $550 a month? A. There is, and I thought that was the rental at that time. The instruction that Mr. Schoenberg had given me was before Mr. Jacobs came to make the rental at $500 a month, and that was purely an inadvertent insertion."

Following this agreement the receiver paid by check the rent for July, 1915, and received two receipts therefor; one of these receipts was for the sum accruing as rent up to the time of the appointment and qualification of Jacobs as receiver; the other was for the remainder of the month of July, after the appointment of the receiver, and represented rent due on the agreement of the receiver to thereafter hold the premises as a tenant by the month. On July 20, 1915, thereafter, notice was given by plaintiff to Jacobs as receiver of the Empress Theatre Company to vacate the premises

in dispute on or before the 31st day of August, 1915. Possession was not given, however, but on September 1, 1915, a check for the September rent was tendered to plaintiff and by it refused. Other checks for rent due (or at least one other check) for subsequent months were also tendered and refused, but such refused checks under the issues now vexing us have no pertinency.

Thereafter, under due and proper orders of the circuit court in the receivership proceeding brought by defendants Bonfils and Tammen against the Empress Theatre Company, Jacobs as receiver of the latter company sold the lease in dispute, together with the other property of the Empress Theatre Company, and this lease was purchased by defendants Kelly, LeMarquand and LeDoux, who thereupon entered into possession of the disputed premises, being inducted into possession by the receiver. After notice given to defendants herein and to the Empress Theatre Company, this proceeding in unlawful detainer was begun. Upon a trial thereof before the court, a jury having been waived —as plaintiff avers and defendants deny—judgment was given for possession, damages and rents as heretofore set out.

Other facts may be found necessary to a clear understanding of a fairly simple proceeding, which has become complicated and involved by the variety and contrariety of pleas, motions, objections and exceptions made before, during and after the trial *nisi*. These further facts we will if necessary set out in juxtaposition to the points we are compelled to discuss.

I.   The first point made by defendants is that under the facts existing they were entitled to a trial by jury. Against this contention plaintiff sets up the stipulation **Waiver:** of waiver set forth in our statement. Defend- **Jury** ants, to escape the force of their solemn waiver **Trial.** of a jury trial, aver that after this stipulation was signed by them and filed in the case plaintiff

filed an amended complaint, which complaint, defendants aver, changed the cause of action. And so, defendants say, perforce such change, they were no longer bound to abide by their waiver. The point was saved by many objections and in divers sufficient ways; one of which was by way of answer invoking the Constitution of Missouri. Hence, in passing we may say, comes our right to entertain this appeal.

We are clearly of the opinion that the defendants' contention upon the state of the abstract law is correct. The point is *res integra* in this State, and while there are a few cases in other jurisdictions holding to a different rule, the great weight of authority, and the reason of the thing supports this authority, is, that the making of any material change in the pleadings by amendment, so that the issues are altered, off-sets the binding force of a waiver of a jury by stipulation. [Reese v. Baum, 82 N. Y. Supp. 157; Hewitt v. Week, 51 Wis. 368; McGeagh v. Nordberg, 53 Minn. 235; Gage v. Commerce Nat. Bank, 86 Ill. 371; Hanchett v. Ives, 171 Ill. 122.] It is obvious that a litigant might be perfectly willing to waive a jury as to a cause of action involving a small sum, or certain issues, and be wholly unwilling to waive a jury trial upon a petition for a larger sum, or upon new and wholly different issues. Such litigant might waive a jury in a trial upon a petition which stated no cause of action and be unwilling to waive a jury trial upon a good petition. Indeed, it may well be said that there is a sort of tacit agreement between the parties that a stipulation to waive the right of trial by a jury is a stipulation to waive that right only as to the case and upon the issues as they stand at the time the stipulation is made and filed. So, if the issues herein were materially changed without the fault of defendants after the stipulation was signed, then it was error to refuse the defendants' request for a jury *non obstante stipulatione.*

In determining this controlling question we need look only to the first count, since that is the count on

which the finding and judgment of the court *nisi* rest. In looking at the separation of the complaint into two counts we must bear in mind that such separation was probably induced by the demurrer of defendants. Two causes of action under the statutes pertaining to forcible entry and detainer were originally joined in a single complaint. Defendants by a futile motion to compel an election and by a seemingly successful demurrer, forced plaintiff to file an amended complaint in two counts. Whether a demurrer as such has any place in this sort of action we need not rule. [See Anderson v. McClure, 57 Mo. App. 93.] The first count, and as stated the one on which the judgment here is bottomed, alleged the holding over of the possession of the premises wilfully and without force after the expiration of the term, and prayed judgment for $5000 damages and alleged the value of the monthly rents and profits as $800. The original 'complaint on file when the waiver of a jury was entered into alleged both an unlawful holding over of the possession without force, and an obtaining of the possession by disseizin. The original complaint also prayed damages, but in the sum of $2000 only. Since the separation into two counts was properly had and since it was apparently induced by the motion to elect or by the demurrer of defendants, no right to a jury can be bottomed upon such separation, and since plaintiff, after its proof was in and before the defendants offered any defense, amended its amended complaint by striking out the figures $5000 and again fixing the damages at the sum of $2000 as in the original complaint, it is obvious that no material change was made in either of the above behalves.

But, as defendants strenuously contend, no amount was fixed or alleged in the original complaint as the value of the monthly rents and profits. The amended complaint fixed these at the sum of $800, and the court, on sufficient testimony warranting that action, found such value to be $650 per month. [Leahy v. Lubman, 67 Mo. App. l. c. 197.] Did the allegation in the amend-

ed complaint of the value of the monthly rents and profits have the effect to change the issues and did it constitute a material alteration of the original complaint in unlawful detainer, wherein, before amendment, no such specific allegation was contained?

We have reached the conclusion, after a painstaking examination of the peculiar statute on which this action is bottomed and of the ruled cases, that it did not. The statutes providing for the practice and proceedings in forcible entry and detainer constitute a special and preclusive code. [Purcell v. Merrick, 172 Mo. App. 412.] Such a proceeding is not to be measured or determined by the ordinary rules and proceedings in civil cases. [Brennan v. McMenamy, 78 Mo. App. l. c. 128; Elliott v. Abell, 39 Mo. App. 349.] Both the complaint provided for by statute (Sec. 7660, R. S. 1909; Sec. 6, p. 788, R. S. 1855) and the verdict prescribed by statute are *sui generis*, [Secs. 7669, 7670 and 7671, R. S. 1909; Secs. 18 and 19, pp. 790-791, R. S. 1855.]

Touching this complaint and construing the statute which has never since been amended, and which prescribes the necessary allegations of a complaint, this court said in the case of Moore v. Dixon, 50 Mo. l. c. 425, this:

"The only point now made in this court to reverse the judgment is that the plaintiff could recover no greater amount of damages than he claimed in his complaint. Under the sixth section of the act regulating forcible entry and detainer, it was not necessary in the complaint to allege a specific claim for damages; and in a complaint founded upon that section, at the trial the jury would be justified in giving damages, and also in stating the monthly rents and profits."

It is apparent from reading the case of Moore v. Dixon, supra, that this court reached the conclusion there announced through its construction of Section 6, page 643, and Section 17, page 645, of Wagner's Statutes. The above sections have, as forecast above, never been amended, but read to-day (except for the im-

material change of a conjunctive to a disjunctive) just as they have read for more than sixty years. [Cf. Secs. 7660 and 7669, R. S. 1909.] Neither the forms in common use (Kelley's Justice Treatise, sec. 551), the statute (Sec. 7660, R. S. 1909), nor the adjudged cases, require any specific allegation as to the value of the monthly rents and profits, or any prayer for the finding of the same. [Sec. 7669, R. S. 1909; Ish v. Chilton, 26 Mo. 256; Moore v. Dixon, 50 Mo. 424; Feedler v. Schroeder, 59 Mo. 364; Hixon v. Selders, 46 Mo. App. 275; School District v. Holmes, 53 Mo. App. 487; Brennan v. Mc-Menamy, 78 Mo. App. 122.] Therefore, it would seem to follow that an amendment which merely asked specifically for a finding which the statutes required to be made without the asking, cannot constitute a material change in the cause of action. Of course, as has been held by the application of the analagous rule in other civil cases, if there is such a specific allegation in the complaint, recovery is limited to the amount thereof. [Balch v. Myers, 65 Mo. App. 422; Haumueller v. Ackermann, 130 Mo. App. 387; Feedler v. Schroeder, supra.] If the sum alleged be found by the court or jury it may by the terms of the statute be doubled (Sec. 7674, R. S. 1909), although no prayer for such doubling is made in the complaint. [Feedler v. Schroeder, supra; Bierkenkamp v. Bierkenkamp, 88 Mo. App. 445; Hadley v. Bernero, 97 Mo. App. 314.]

Both the statute (Sec. 7669, R. S. 1909) and the reason of the thing, as applied to the concrete facts before us, point to the correctness of the view here taken. The original complaint herein contained a prayer for damages in the sum of $2000. When this action was commenced, the damages did not amount to the sum alleged in this complaint, and therein prayed for. Had the action been tried in the justice's court speedily, instead of being removed thence to the circuit court by *certiorari*, the amount of damages set out in the complaint would have fully covered all damages accruing or recoverable under the testimony. If thereafter, and

promptly upon an adverse result, defendants, pursuant
to the mandate of the judgment, had yielded possession,
no necessity would have existed for the finding of the
value of future rents and profits. Therefore, no pos-
sible necessity would have existed for any allegation in
the complaint, of any amount as the value thereof. In
other words, the view that the complaint in unlawful
detainer, in order to be sufficient and in order to warrant
a finding of the value of future rents and profits, must
allege such value and pray for a finding thereof by the
triers of fact, is logically bottomed on the assumed duty
of a plaintiff to presume that the defendant will not
yield possession promptly upon the rendition of judgment
against him. It is clear that no such duty rests upon
a plaintiff in such a case. The damages should properly
*cover accrued rents and profits up to the time of the
verdict.* If defendants, being cast, should immediately
comply with the judgment of the court by yielding pos-
session, the finding of the value of future rents and
profits would be an unnecessary and useless thing. Since
therefore upon authority and the reason of the thing, an
allegation of the value of the future rents and profits
is not necessary in a complaint for unlawful detainer,
we conclude that the addition of such an allegation to
the first count of plaintiff's amended complaint did not
have the effect materially to change its cause of action.
That the pleading was more definite and artificial with
such allegation than without it, may be conceded. But
we approach the question here solely from the point
of view whether the addition of such an allegation con-
stituted a material alteration of the complaint. Holding
that it did not, the contention of defendants, being bot-
tomed wholly upon the assumption that the change made
was a material one, must be disallowed.

II. Complaint is made by defendants that the learn-
ed trial court pre-judged this case in the midst of the
trial by saying in effect that the conceded appointment

of a receiver constituted a breach of condition for which the lessor, absent facts constituting a waiver, might terminate the tenancy and re-enter. We do not think this point is well-taken. What the learned trial judge said amounted only to his construction of the meaning of that clause of the lease which we have quoted and which provided for the re-entry of the lessor in the event of the appointment of a receiver for the lessee. The construction of the language of the clause in question was for the judge in his judicial character, although he sat here also as the trier of the facts. If we may so express the thought, it was the privilege and the duty of the trial judge to rule this question *on the judge-side and not on the jury-side of the court.* Being privileged to rule it in his judicial character, it was a pure question of law which required no evidence for its elucidation. Indeed, the defense urged by defendants, upon this phase of the case, was a waiver by plaintiff of the condition broken arising upon the facts in the case. Such a defense cannot be available till a breach of condition occurs. If there was no breach, there was nothing for plaintiff to waive. While construing the language of the lease contract to mean that upon the appointment of a receiver the lease terminated and the remainder of the term reverted to the lessor, the learned judge specifically stated that he was making no ruling upon the waiver pleaded by the defendants, but that he would thereafter resolve that question upon the facts adduced in testimony. We are of the opinion that he took the correct view of the meaning of the disputed clause, and that the contention that his action in the premises constituted a prejudging of the case ought to be disallowed.

In this view the question whether the facts shown in evidence amounted to a waiver of the condition broken became one to be resolved by the court sitting as a jury. This was a disputed issue, for upon this point there was evidence *pro* and *con.* Since there was substantial evidence to support the finding of the court, we are power-

*Note (margin): Pre-Judging Case.*

less to interfere, even if we were disposed to do so. [In re Lankford, 272 Mo. 1.]

III. But it is strenuously contended that no month-to-month tenancy was possible of creation, because no agreement with the receiver for the creation of such a tenancy could be valid or binding. This upon the view that as such a receiver is a mere arm of the court which appoints him, he can make no valid or binding contract affecting the property in his hands without the consent of such court. We do not think there can be any serious doubt about the legal correctness of this view. But whatever waiver there is in this case is bottomed wholly upon the dealings of plaintiff with the receiver. The facts shown by the testimony and the documents in evidence prove conclusively, so far as we, as an appellate court, are concerned, that *plaintiff never acquiesced in the receiver's possession as a tenant under the lease* after the receiver was appointed. Four days after the appointment and qualification of Jacobs as receiver, plaintiff served notice on him as manager of the Empress Theatre Company, and also as receiver of the latter company, advising him that the lease was at an end by reason of a forfeiture arising from the appointment of a receiver for the lessee. At this time Jacobs, as receiver, was in possession of the disputed premises. Two days after this notice was served on him, Jacobs called on the attorney for plaintiff, paid the rent on the disputed premises for six days and up to the time of his qualification as receiver, and made an agreement (which we may now concede to have been out of his power to make, absent confirmation by the court) to remain in possession as a tenant by the month. Thereupon, he paid and plaintiff accepted rent as a tenant by the month for the remainder of the month of July. On the 20th day of the same month notice was given to Jacobs as receiver, who was still in possession as such, terminating the month-to-month tenancy and demanding possession of the premises on September 1, 1915. The rent for August was paid and accepted

without anything further having been done, written or said on either side. After August 31, 1915, no more rent was accepted by plaintiff, though tenders thereof were made for both the months of September and October.

Can waiver be present as a matter of law where the facts show full reliance by the parties at all times upon a situation which negatives and contradicts any intention to waive? We think not. The general rule announced by a most excellent work after a careful consideration of the great majority of the ruled cases, is this:

"The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other, or one party has so acted as to mislead the other and is estopped thereby. Since intent is an operation of the mind it should be proven and found as a fact, and is rarely to be inferred as a matter of law. An intention to make the waiver claimed should clearly be made to appear by the evidence; and the best evidence of intention is to be found in the language used by the parties. The true inquiry is what was said or written, and whether what was said indicated the alleged intention. The secret understanding or intent of the parties is immaterial on the question of waiver. The intention need not necessarily be proved by express declarations, but may be shown by the acts and conduct of the parties, from which an intention to waive may be reasonably inferred, or even by non-action on their part. Mere silence at a time when there is no occasion to speak is not a waiver, nor evidence from which waiver may be inferred, especially where such silence is unaccompanied by any act calculated to mislead." [40 Cyc. 261.]

It is clear that the facts in this case, as the learned trial court was permitted under the rule to find them (In Re Lankford's Estate, supra), bring it within the

rule above announced.  The view that a waiver of a forfeiture of a lease will not be inferred after condition broken where neither party relied upon the continuance of the lease, and where all of the facts upon which the parties acted were fully known to the adverse party, has in effect been taken in a well considered case by the St. Louis Court of Appeals.  [Baxter v. Heimann, 134 Mo. App. 260.]  The case of Garnhart v. Finney, 40 Mo. 449, is relied upon by defendants as furnishing authority for the position which they assume.  We find no fault whatever with the rule announced in the Garnhart case.  Upon the facts held in judgment in that case no other view than that taken was legally possible.  But a bare reading of the latter case discloses how far the facts therein differ from the facts now before us.  In the Garnhart case rent was accepted by the lessor for more than four years after conditions were broken, without insisting upon a forfeiture, and without any suggestion of forfeiture, except a faint assertion thereof subsequently withdrawn.  After the abandonment of the vague suggestion of forfeiture, the lessee in the Garnhart case constructed upon the leased premises valuable improvements, and the lessor continued to accept payment of rents until the first full term expired, and for a period as stated, of four years, without any objection, till the lessee elected to hold over under his option for another term.  Here, immediately after the occurrence of the fact constituting a breach of condition, notice of plaintiff's election to declare a forfeiture therefor was given.  And plaintiff has throughout and up to now continuously insisted on this forfeiture.  Thereafter, an agreement for a continuance in possession of the receiver of the lessee was made with the latter.  But such continuation in possession was not to be under the terms of the lease now alleged to be forfeited, but was pursuant to a new arrangement entirely. No acquiescence in the

breach ever at any time occurred on plaintiff's part. Nor is there in the record any acquiescence in the receiver's alleged possession under the lease. The lease was throughout by plaintiff declared and deemed to be forfeited, abrogated and at an end, and this condition of forfeiture was agreed to and acquiesced in by the lessee's receiver, who fully understood all the facts and the entire situation and who thereafter was treated as and paid rent till given notice to quit, as a tenant by the month. No one ought to be deemed to waive a right when every act he does and every word he utters constitutes a denial of a waiver thereof, and a denial of any intention to waive it. Especially when this attitude is fully disclosed to, and known at all times by the adverse party. We conclude that there was no waiver of the forfeiture disclosed by the facts in this case.

Other errors are assigned, and set forth in defendant's printed assignment of errors, but we find no sufficient merit in any of them to warrant a reversal, and we are precluded from a review of them by the rules that error will not be presumed; that the mere assertion of error is not sufficient to convict the trial court thereof; that to the acts of the trial court, naught else appearing, the presumption of correctness attaches, and that upon him who alleges error is thrust the burden of proving it. Finding no error warranting reversal, it follows that the case ought to be affirmed. Let this be done. All concur.